DAVIS, Judge.
 

 *20
 
 Christopher M. Comstock ("Defendant") appeals from the trial court's 14 October 2014 order granting the motion of Ashley A. Comstock ("Plaintiff") to renew a domestic violence protective order ("DVPO")
 

 *21
 
 previously entered against him. On appeal, Defendant contends that the trial court lacked the authority to renew the DVPO because when Plaintiff filed her motion seeking its renewal, she no longer resided in the State of North Carolina. After careful review, we affirm the trial court's order.
 

 Factual Background
 

 Plaintiff and Defendant were married on 6 May 2001 and separated on 10 June 2010. The parties have two minor children together. On 3 September 2010, Plaintiff sought a DVPO against Defendant, which was issued on 9 September 2010 by the Honorable Ronald L. Chapman in Mecklenburg County District Court.
 

 In the DVPO, the trial court concluded that Defendant had committed acts of domestic violence against Plaintiff and that there was a danger of serious and immediate injury to her. Specifically, the trial court made findings of fact concerning an incident on 10 June 2010 where Defendant struck Plaintiff in the mouth, lacerating the inside of her lip, and then continued assaulting Plaintiff "in the whereabouts of the parties' children." The DVPO (1) granted Plaintiff possession of the parties' residence; (2) ordered Defendant not to "assault, threaten, abuse, follow, harass ... or interfere" with Plaintiff; (3) required Defendant to stay away from Plaintiff's residence and workplace; and (4) prohibited Defendant from possessing or purchasing a firearm. The DVPO stated that it would remain in effect until 8 September 2011.
 

 Defendant was held in contempt twice for violating the DVPO. First, on 3 May 2011, the trial court held Defendant in civil contempt for several instances of conduct toward Plaintiff that the court found were "intended solely to harass and intimidate her." These incidents included Defendant making statements to Plaintiff to indicate that he was watching her, sitting in his car outside her residence, and almost striking her car with his car during a meeting to exchange their children.
 

 Second, on 15 August 2011, the trial court held Defendant in criminal contempt for violating the DVPO by sending repeated harassing emails to Plaintiff's work email address despite Plaintiff's numerous prior requests that he refrain from doing so. In its 15 August 2011 order, the trial court noted Defendant had "testified that he knows the [DVPO] better than anyone" and "looks at it all the time before he does things." The court determined that this testimony supported its conclusion that Defendant "looks at the Court's orders and tries to find the grey areas to justify his behavior to aggravate and possibly intimidate [Plaintiff]." The trial court sentenced Defendant to 30 days in the custody of the
 
 *22
 
 Mecklenburg County Jail and then suspended the sentence on the condition that Defendant spend 9 nights in jail.
 

 On 2 August 2011, prior to the expiration of the DVPO, Plaintiff filed a motion to renew it. Plaintiff alleged that she was still in fear of Defendant and that he continued to harass and threaten her. On 6 September 2011, the trial court entered a consent order renewing the DVPO until 5 September 2012.
 

 In the spring of 2012, Plaintiff and the minor children moved to Dallas, Texas. On 20 August 2012, prior to the expiration of the 6 September 2011 DVPO renewal order, Plaintiff filed another motion to renew the DVPO. The trial court granted Plaintiff's motion, renewing the DVPO by order entered 22 March 2013 based on its determination that there was good cause for the renewal in light of the fact that Plaintiff continued to be in legitimate fear of Defendant. The 22
 
 *185
 
 March 2013 order renewed the DVPO until 5 September 2014.
 

 On 4 September 2014, Plaintiff sought a third renewal of the DVPO, asserting that she was "still very afraid of the Defendant" and that she and Defendant were "still involved in ongoing domestic litigation and [she] believe[d] that the Defendant [was] very angry with [her]." Plaintiff stated in her motion that Defendant had showed their son a gun he possessed and "made statements indicating that he was going to kill [her]." On 14 October 2014, the Honorable David H. Strickland entered an order ("the 14 October Order") renewing the DVPO against Defendant until 14 October 2016. Defendant filed a timely notice of appeal from the 14 October Order.
 

 Analysis
 

 Defendant's primary argument on appeal is that the trial court's entry of the 14 October Order exceeded the scope of its authority under N.C. Gen.Stat. §§ 50B-2 and 50B-3 because Plaintiff was no longer a North Carolina resident. We disagree.
 

 The issuance and renewal of DVPOs, the means for enforcing them, and the penalties for their violation are governed by North Carolina's Domestic Violence Act, which is codified in Chapter 50B of the North Carolina General Statutes. When a party appeals a DVPO, this Court reviews the order to determine "whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts."
 
 Thomas v. Williams,
 
 --- N.C.App. ----, ----,
 
 773 S.E.2d 900
 
 , 902 (2015) (citation omitted).
 

 *23
 
 N.C. Gen.Stat. § 50B-2(a) addresses the requirements for initially obtaining a DVPO and provides as follows:
 

 Any person
 
 residing in this State
 
 may seek relief under this Chapter by filing a civil action or by filing a motion in any existing action filed under Chapter 50 of the General Statutes alleging acts of domestic violence against himself or herself or a minor child who resides with or is in the custody of such person. Any aggrieved party entitled to relief under this Chapter may file a civil action and proceed pro se, without the assistance of legal counsel. The district court division of the General Court of Justice shall have original jurisdiction over actions instituted under this Chapter. Any action for a domestic violence protective order requires that a summons be issued and served. The summons issued pursuant to this Chapter shall require the defendant to answer within 10 days of the date of service. Attachments to the summons shall include the complaint, notice of hearing, any temporary or ex parte order that has been issued, and other papers through the appropriate law enforcement agency where the defendant is to be served. In compliance with the federal Violence Against Women Act, no court costs or attorneys' fees shall be assessed for the filing, issuance, registration, or service of a protective order or petition for a protective order or witness subpoena, except as provided in G.S. 1A-1, Rule 11.
 

 N.C. Gen.Stat. § 50B-2(a) (2013) (emphasis added).
 

 Thus, pursuant to the statute, a party seeking the
 
 initial
 
 entry of a DVPO-either through the filing of a new action under Chapter 50B or the filing of a motion in an existing Chapter 50 case-must reside in North Carolina.
 

 Id.
 

 The
 
 renewal
 
 of a DVPO, conversely, is governed by a separate statutory provision of the Domestic Violence Act- N.C. Gen.Stat. § 50B-3(b). N.C. Gen.Stat. § 50B-3(b) states, in pertinent part, as follows:
 

 Protective orders entered pursuant to this Chapter shall be for a fixed period of time not to exceed one year. The court may renew a protective order for a fixed period of time not to exceed two years, including an order that has been previously renewed, upon a motion by the aggrieved party filed before the expiration of the current
 
 *24
 
 order.... The court may renew a protective order for good cause. The commission of an act as defined in G.S. 50B-1(a) by the defendant after entry of the current order is not required for an order to be renewed....
 

 N.C. Gen.Stat. § 50B-3(b) (2013).
 

 In the present case, the initial DVPO against Defendant was entered on 9 September
 
 *186
 
 2010 following Plaintiff's filing of a motion in the cause for a DVPO and for emergency child custody in file number 10 CVD 12874, the parties' existing Chapter 50 case involving claims for divorce from bed and board, child custody, child support, and equitable distribution. Plaintiff's motion seeking the DVPO stated that she was living in the parties' former marital residence in Mecklenburg County, North Carolina. Thus, Plaintiff was clearly a "person residing in this State" at the time she initially sought the entry of the DVPO against Defendant, and the trial court therefore had jurisdiction to issue the DVPO. N.C. Gen.Stat. § 50B-2. Since that time, Plaintiff has sought three renewals of the DVPO.
 

 Unlike N.C. Gen.Stat. § 50B-2, N.C. Gen.Stat. § 50B-3(b) contains no residency requirement for the renewal of a DVPO. "It is well established that in order to determine the legislature's intent, statutory provisions concerning the same subject matter must be construed together and harmonized to give effect to each."
 
 AH N.C. Owner LLC v. N.C. Dep't of Health & Human Servs.,
 
 ---N.C.App. ----, ----,
 
 771 S.E.2d 537
 
 , 548 (2015). Where, as here, the General Assembly "includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that [the legislative body] acts intentionally and purposely in the disparate inclusion or exclusion."
 

 Id.
 

 at ----,
 
 771 S.E.2d at 548-49
 
 (citation, quotation marks, and alterations omitted). Thus, the inclusion of a residency requirement in the statutory provision governing the initial issuance of a DVPO coupled with the omission of such a requirement in the statute authorizing the renewal of a DVPO demonstrates a legislative intent to permit such a renewal regardless of whether the moving party remains a North Carolina resident.
 

 We therefore hold that based on the application of well-settled rules of statutory interpretation, the moving party's continued residency within the State of North Carolina is not a jurisdictional prerequisite for obtaining the renewal of an existing DVPO. Indeed, the
 
 only
 
 jurisdictional requirement contained within N.C. Gen.Stat. § 50B-3(b) is that a party seeking the renewal of a DVPO file such a motion before the expiration of the existing order. N.C. Gen.Stat. § 50B-3(b) ;
 
 see also
 

 Rudder v. Rudder,
 
 ---N.C.App. ----, ----,
 
 759 S.E.2d 321
 
 , 329 (2014) (noting that
 
 *25
 
 "the motion for renewal [of a DVPO] must be filed
 
 before the expiration
 
 of the existing order"). Consequently, because Plaintiff filed her motion to renew the DVPO on 4 September 2014-the day before it was set to expire-the trial court had the authority to renew the order as long as it determined that good cause existed to do so.
 

 In the 14 October Order, the trial court determined that there was, in fact, good cause to renew the DVPO based on its findings regarding Plaintiff's continued fear of Defendant and Defendant's past violations of the DVPO.
 
 See
 

 Forehand v. Forehand,
 
 --- N.C.App. ----, ----,
 
 767 S.E.2d 125
 
 , 128-29 (2014) (holding that defendant's prior conduct resulting in issuance of initial DVPO may serve as basis for trial court's finding of good cause for renewal). Defendant has not specifically challenged these findings, and as a result, they are binding on appeal.
 
 Balawejder v. Balawejder,
 

 216 N.C.App. 301
 
 , 312,
 
 721 S.E.2d 679
 
 , 686 (2011). Nor has he argued that these findings were insufficient to support the trial court's conclusion that renewal of the DVPO was proper.
 
 [1]
 
 We therefore hold that the trial court possessed the authority pursuant to N.C. Gen.Stat. § 50B-3(b) to renew the DVPO against Defendant, and we affirm the trial court's 14 October Order.
 
 [2]
 

 *187
 

 Conclusion
 

 For the reasons stated above, we affirm.
 

 AFFIRMED.
 

 Chief Judge McGEE and Judge HUNTER, JR. concur.
 

 [1]
 

 Because of our holding that the North Carolina Domestic Violence Act imposes no residency requirement on an aggrieved party seeking to renew a DVPO, Defendant's final argument-that the trial court erred by failing to make findings of fact on the issue of Plaintiff's residency-is likewise without merit.
 
 See
 

 Fortis Corp. v. Ne. Forest Prods.,
 

 68 N.C.App. 752
 
 , 753,
 
 315 S.E.2d 537
 
 , 538 (1984) ("The general rule is that in making findings of fact, the trial court is required only to make brief, pertinent and definite findings and conclusions about
 
 the matters in issue,
 
 but need not make a finding on every issue requested." (emphasis added)).
 

 [2]
 

 Defendant also makes a cursory reference in his brief to his belief that the trial court "seemingly ... extended [the DVPO] beyond the two (2) year limitation" set forth in N.C. Gen.Stat. § 50B-3(b) by setting the renewed DVPO to expire two years after the date of the hearing on Plaintiff's renewal motion rather than two years after the expiration date of the prior DVPO. In the event that Defendant intended to claim error as to this portion of the 14 October Order, we deem the issue abandoned because he offers no actual substantive argument with regard to this issue.
 
 See
 
 N.C.R.App. P. 28(b)(6) ("Issues not presented in a party's brief, or in support of which no reason or argument is stated, will be taken as abandoned.").