DIETZ, Judge.
 

 *403
 
 Respondent appeals the trial court's order terminating her parental rights. Her court-appointed counsel filed a "no-merit" brief indicating that there are no non-frivolous issues on appeal. We have conducted an independent review of the record and agree that any arguments Respondent might advance on appeal are frivolous. We therefore affirm the trial court's order.
 

 We could end our analysis here. But because this Court has found itself so divided over whether we
 
 must
 
 conduct an independent review in these cases, we take the time to provide a thorough legal analysis.
 

 As explained below, the root of this issue is the language in
 
 Anders v. State of California
 
 ,
 
 386 U.S. 738
 
 ,
 
 87 S.Ct. 1396
 
 ,
 
 18 L.Ed.2d 493
 
 (1967). In
 
 Anders
 
 , the U.S. Supreme Court created a multi-step process to handle cases in which a criminal defendant has a constitutional right to counsel, but the defendant's appointed lawyer concludes that any
 
 *474
 
 arguments on appeal would be frivolous. The final step in that process is the appellate court's independent review of the record to confirm the appeal is "wholly frivolous."
 

 Id.
 

 at 744
 
 ,
 
 87 S.Ct. 1396
 
 .
 

 When our state Supreme Court created an
 
 Anders
 
 -like process for juvenile cases (civil cases to which
 
 Anders
 
 does not apply) through Rule 3.1(d) of the Rules of Appellate Procedure, the Court adopted most of the steps in the
 
 Anders
 
 process, often copying the language of the
 
 *404
 

 Anders
 
 opinion verbatim. But the Supreme Court did not include the language concerning counsel's obligation to withdraw and the court's independent review of the record, both of which lie at the heart of the
 
 Anders
 
 process.
 

 This could have been an oversight. But even if we concluded that it was, this Court has no authority to insert language into the text of procedural rules because the Court thinks the authors would have wanted it there. Moreover, as explained below, there are sound reasons why the Supreme Court might have omitted this language to broaden indigent litigants' access to justice, not diminish it. Faced with this reality, until otherwise instructed by our Supreme Court, we will follow the plain language of Rule 3.1(d). That language, in conjunction with our existing precedent, permits but does not require this Court to conduct an independent review of the record in these cases.
 

 Facts and Procedural History
 

 When Respondent's son Ike
 
 [1]
 
 was born, his blood tested positive for illegal drugs. At a check-up while eighteen months old, healthcare providers discovered that Ike had gained only slightly more than a pound of weight during the last year. They diagnosed Ike with failure to thrive, indicating abnormal growth and development. Respondent later was arrested on drug charges, was diagnosed with several mental illnesses including bipolar disorder and schizophrenia, and was found to be living in a relationship involving domestic violence.
 

 Ultimately, the Orange County Department of Social Services petitioned to terminate Respondent's parental rights based on neglect and dependency. After a hearing, the trial court terminated Respondent's parental rights on both grounds. Respondent timely appealed.
 

 Respondent's court-appointed counsel filed a "no-merit" brief indicating that there were no non-frivolous issues to assert in this appeal. That brief provided an outline of issues that "might arguably support the appeal" and an explanation of why those issues were frivolous, as required by Rule 3.1(d) of the Rules of Appellate Procedure. Counsel provided a copy of the brief to Respondent along with the record on appeal and accompanying transcripts, and a letter advising Respondent of her right to file her own brief and the timeframe for doing so. Respondent did not file a separate brief.
 

 *405
 

 Analysis
 

 This Court is no one's lawyer. Our role is to remain impartial, to review the litigants' issues on appeal, and to render a judgment on those issues. Thus, ordinarily, this Court will not comb through the appellate record searching for possible arguments no one else had thought to raise. Our review is confined to the issues that the litigants
 
 choose
 
 to assert on appeal.
 

 But the Sixth and Fourteenth Amendments alter this rule (slightly) in certain criminal cases. In
 
 Anders v. State of California
 
 ,
 
 386 U.S. 738
 
 ,
 
 87 S.Ct. 1396
 
 ,
 
 18 L.Ed.2d 493
 
 (1967), the Supreme Court established a special procedure to handle cases in which a criminal defendant has a constitutional right to counsel, but the defendant's appointed counsel concludes that any arguments on appeal would be "wholly frivolous."
 

 Id.
 

 at 744
 
 ,
 
 87 S.Ct. 1396
 
 . When this occurs, the
 
 Anders
 
 process begins, and it works as follows:
 

 First, counsel must "advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal."
 

 Id.
 

 Second, "[a] copy of counsel's brief should be furnished the indigent and time allowed him to raise any points that he chooses."
 

 Id.
 

 Third, "the court-not counsel-then proceeds, after a full examination of all the
 
 *475
 
 proceedings, to decide whether the case is wholly frivolous. If it so finds it may grant counsel's request to withdraw and dismiss the appeal."
 

 Id.
 

 "On the other hand, if it finds any of the legal points arguable on their merits (and therefore not frivolous) it must, prior to decision, afford the indigent the assistance of counsel to argue the appeal."
 

 Id.
 

 Importantly, the
 
 Anders
 
 process is designed around counsel's request to withdraw. The entire purpose of the
 
 Anders
 
 brief and the court's "independent review" of the record (the
 
 Anders
 
 opinion doesn't actually call it that) is to assist the court "in making the critical determination whether the appeal is indeed so frivolous that counsel should be permitted to withdraw."
 
 McCoy v. Court of Appeals of Wisconsin
 
 ,
 
 486 U.S. 429
 
 , 439,
 
 108 S.Ct. 1895
 
 ,
 
 100 L.Ed.2d 440
 
 (1988).
 

 For this reason, the court's
 
 Anders
 
 review does not entail an independent
 
 adjudication
 
 of potentially non-frivolous arguments identified during the court's review of the record. The independent review under
 
 Anders
 
 is limited to confirming that the appeal is "wholly frivolous."
 
 386 U.S. at 744
 
 ,
 
 87 S.Ct. 1396
 
 . If the court agrees that it is-meaning the court sees no potentially non-frivolous arguments-the court grants counsel's motion to withdraw and dismisses the appeal as frivolous.
 

 Id.
 

 On the other hand, if the court spots any issues of arguable merit, its independent review
 
 *406
 
 ends and it either rejects counsel's motion to withdraw or, more typically, grants that motion but appoints new, substitute counsel and orders counsel to file a brief on the merits.
 
 See
 
 ,
 
 e.g.
 
 ,
 
 United States v. Estevez Antonio
 
 ,
 
 311 F. App'x 679
 
 , 681 (4th Cir. 2009). The case then proceeds like any other appeal.
 

 In criminal cases in our State courts, we must follow the
 
 Anders
 
 procedure because it arises from the protections guaranteed by the Sixth and Fourteenth Amendments. But there are other categories of cases in North Carolina where litigants have a
 
 statutory
 
 right to counsel but not a
 
 constitutional
 
 one. A decade ago, this Court examined whether
 
 Anders
 
 applies to a case like this one, concerning the termination of parental rights, where the right to counsel was provided by statute, not by the state or federal constitution.
 
 In re N.B
 
 .,
 
 183 N.C. App. 114
 
 , 117,
 
 644 S.E.2d 22
 
 , 24 (2007). We held that
 
 Anders
 
 did not apply.
 

 Id.
 

 This meant that "counsel for a parent appealing an order terminating parental rights did not have a right to file an
 
 Anders
 
 brief."
 

 Id.
 

 But we "urge[d] our Supreme Court or the General Assembly to reconsider this issue."
 

 Id.
 

 Our Supreme Court did. The Court amended Rule 3.1 of the North Carolina Rules of Appellate Procedure to add a section titled "No-Merit Briefs." N.C. R. App. P. 3.1(d). That section adopted most of the requirements of
 
 Anders
 
 , often by copying verbatim from the language of Justice Clark's majority opinion in the case. But the Supreme Court's amendment to Rule 3.1 left out two prominent parts of the
 
 Anders
 
 process: (1) the requirement that counsel move to withdraw; and (2) the court's obligation to review the record and confirm the appeal is wholly frivolous before granting the motion to withdraw and dismissing the appeal.
 

 Why? When our Supreme Court drafted Rule 3.1(d),
 
 Anders
 
 had been around for forty years and its multi-step procedure was well-settled. So why leave out these two critical steps of the
 
 Anders
 
 process?
 

 To be sure, it could have been an oversight. But it is also possible that this omission was intended-that our Supreme Court chose an alternative approach different from the withdrawal-focused approach in
 
 Anders
 
 . After all, as the U.S. Supreme Court has acknowledged, "public defenders making withdrawal decisions are viewed by indigent prisoners as hostile state actors."
 
 Polk County v. Dodson
 
 ,
 
 454 U.S. 312
 
 , 324,
 
 102 S.Ct. 445
 
 ,
 
 70 L.Ed.2d 509
 
 (1981). The Supreme Court emphasized that there is "little justification for this view," but it nonetheless exists among many indigent defendants.
 

 Id.
 

 And although it may be inaccurate, this view is not irrational-when your lawyer asks the court for permission to quit, it's not unreasonable to conclude your lawyer isn't on your side anymore.
 

 *407
 
 What our Supreme Court might have intended with Rule 3.1(d) was to avoid the tension that results when counsel seeks to terminate the attorney-client relationship
 
 *476
 
 when submitting an
 
 Anders
 
 brief. Rule 3.1(d) provides the following:
 

 No-Merit Briefs
 
 . In an appeal taken pursuant to N.C.G.S. § 7B-1001, if, after a conscientious and thorough review of the record on appeal, appellate counsel concludes that the record contains no issue of merit on which to base an argument for relief and that the appeal would be frivolous, counsel may file a no-merit brief. In the brief, counsel shall identify any issues in the record on appeal that might arguably support the appeal and shall state why those issues lack merit or would not alter the ultimate result. Counsel shall provide the appellant with a copy of the no-merit brief, the transcript, the record on appeal, and any Rule 11(c) supplement or exhibits that have been filed with the appellate court. Counsel shall also advise the appellant in writing that the appellant has the option of filing a
 
 pro se
 
 brief within thirty days of the date of the filing of the no-merit brief and shall attach to the brief evidence of compliance with this subsection.
 

 N.C. R. App. P. 3.1(d).
 

 The rule does not anticipate that counsel will seek to terminate the attorney-client relationship and, indeed, counsel in these cases do not do so. Instead, Rule 3.1(d) permits the attorney to continue advising the client about the allegations in the case, the standards of review on appeal, the rules of appellate procedure, and other legal complexities of an appeal. The attorney's continued service assures that the client will be able to file a brief raising the arguments she believes the court should address (which, because the client is not bound by ethical rules concerning frivolous arguments, may include issues the lawyer could not assert).
 

 Examining this procedure in light of the
 
 Anders
 
 process, one can see that it anticipates a slightly different set of submissions to the Court: (1) a no-merit brief from counsel, which must "identify any issues in the record on appeal that might arguably support the appeal"; (2) the client's
 
 pro se
 
 principal brief and reply brief, prepared with access to counsel to assist with procedural and substantive legal questions; and (3) the briefs of the other parties in the appeal. N.C. R. App. P 3.1(d). With this information in hand, this Court can then adjudicate the appeal
 
 *408
 
 as it would any other-by addressing the issues raised in the briefs and treating issues not raised as abandoned. N.C. R. App. P. 28(b)(6). Through this process, there is no need for the Court to conduct an independent review of the record, as would be necessary under
 
 Anders
 
 where the Court's focus is whether to permit counsel to withdraw from the case.
 

 Is this what the Supreme Court intended? Or did the Court intend to include the independent review requirement under
 
 Anders
 
 despite not saying so in the text of the rule? We have no way to know, and that's the point. "This Court is an error-correcting body, not a policy-making or law-making one."
 
 Davis v. Craven County ABC Board
 
 , --- N.C. App. ----, ----,
 
 814 S.E.2d 602
 
 , 605 (2018). When asked to interpret a procedural rule, we look not to what we would have done as drafters of the rule, but instead to the text and to principles of textual interpretation. These tools lead us to conclude that an independent review by the Court is not a requirement of Rule 3.1(d).
 

 First, there is no ambiguity in the text; the rule simply does not require the Court to conduct an independent review. Because the text itself is clear and unambiguous, "there is no room for judicial construction."
 
 Wilkie v. City of Boiling Spring Lakes
 
 ,
 
 370 N.C. 540
 
 , 547,
 
 809 S.E.2d 853
 
 , 858 (2018).
 

 Second, canons of interpretation support this plain-language approach. The Supreme Court knew
 
 Anders
 
 required an independent review in criminal cases, copied much of
 
 Anders
 
 into Rule 3.1(d), but left out the independent review language. The decision to exclude that language is presumed to be purposeful.
 
 See
 

 Comstock v. Comstock
 
 ,
 
 244 N.C. App. 20
 
 , 24,
 
 780 S.E.2d 183
 
 , 186 (2015). Moreover, by departing from the settled language of
 
 Anders
 
 and instead adopting a different rule, we must presume that the Supreme Court intended something different than what
 
 Anders
 
 requires.
 
 See
 

 *477
 

 Wells Fargo Bank, N.A. v. American Nat'l Bank & Tr. Co
 
 ., --- N.C. App. ----, ----,
 
 791 S.E.2d 906
 
 , 910 (2016).
 

 Third, as explained above, there are sound reasons why the Supreme Court might have left out this independent review requirement, in order to avoid the tension created by counsel seeking to withdraw from the case. Thus, our plain-text interpretation is a reasonable one and certainly not the type of "absurd result" that permits us to disregard the text.
 
 Mazda Motors of Am., Inc. v. Sw. Motors, Inc
 
 .,
 
 296 N.C. 357
 
 , 361-62,
 
 250 S.E.2d 250
 
 , 253 (1979).
 

 These settled rules of interpretation support a conclusion that we are not required to conduct an independent review of the record under
 
 *409
 
 the text of Rule 3.1(d) as it is written. And even if we thought otherwise, we are not permitted to depart from this Court's recent holding in
 
 In re L.V.
 
 , --- N.C. App. ----, ----,
 
 814 S.E.2d 928
 
 , 929 n.2 (2018), that "Rule 3.1(d) does
 
 not
 
 explicitly grant indigent parents the right to receive an
 
 Anders
 
 -type review of the record by our Court, which would allow our Court to consider issues not explicitly raised on appeal."
 
 In re Civil Penalty
 
 ,
 
 324 N.C. 373
 
 , 384,
 
 379 S.E.2d 30
 
 , 37 (1989).
 

 Of course, holding that an independent review is not
 
 required
 
 does not mean we cannot conduct one. Even before Rule 3.1(d) existed, in juvenile cases where court-appointed counsel believed the appeal was wholly frivolous, this Court acknowledged that it had the discretion to "review the record to determine whether the evidence supports the trial court's findings of fact and conclusions of law."
 
 N.B
 
 .,
 
 183 N.C. App. at 119
 
 ,
 
 644 S.E.2d at
 
 25 (citing N.C. R. App. P. 2). As our Supreme Court later emphasized, when a litigant has lost the right to argue an issue due to a rules violation unrelated to jurisdiction in the trial court, "[t]he imperative to correct fundamental error, however, may necessitate appellate review of the merits despite the occurrence of default."
 
 Dogwood Dev. & Mgmt. Co., LLC v. White Oak Transp. Co.
 
 ,
 
 362 N.C. 191
 
 , 196,
 
 657 S.E.2d 361
 
 , 364 (2008). Moreover, this Court always has authority under Rule 2 to suspend our procedural rules entirely in extraordinary cases to prevent "manifest injustice." N.C. R. App. P. 2. We can use these forms of discretionary authority to conduct an independent review, where appropriate, to ensure justice is done in these important cases. What we cannot do is rewrite our State's procedural rules to impose requirements that simply aren't there.
 

 With these principles in mind, we have reviewed the submissions of the parties in this case, conducted our own review of the record in our discretion, and determined that the trial court's findings of fact are supported by competent evidence and those findings, in turn, support the court's conclusions of law. We therefore affirm the trial court's order.
 

 AFFIRMED.
 

 Judges BRYANT and INMAN concur.
 

 [1]
 

 We use a pseudonym to protect the identity of the juvenile.